## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

**THL Holding Company, LLC,**

       Plaintiff,

**v.**

**Apple, Inc.**

       Defendant.

**Case No.**  6:23-cv-00077

*JURY TRIAL DEMANDED*

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff THL Holding Company LLC ("THL") for its Complaint against Defendant Apple Inc. ("Apple" or "Defendant") for patent infringement under 35 U.S.C. § 271 relating to U.S. Patent Nos. 8,768,381 (the '381 patent"), 11,265,680 (the "'680 patent"), and 11,350,246 (the "'246 patent" and collectively, the Patents-in-Suit") alleges as follows:

# I.    PARTIES

1.    Plaintiff THL Holding Company LLC ("THL") is a Delaware company headquartered in the Western District of Texas since at least as early as 2011.

2.    Defendant Apple Inc. ("Apple" or "Defendant") is a California corporation and maintains a place of business located at One Apple Park Way, Cupertino, California 95014, and may be served with process through its registered agent, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.    Apple maintains regular and established places of business within this District including at least the following locations: 12545 Riata Vista Circle, Austin, Texas 78727; 6900 W. Parmer Lane, Austin, Texas 78729; 12801 Delcour Drive, Austin, Texas 78727; 3121 Palm Way, Austin, Texas 78758; 2901 S. Capital of Texas Highway, Austin, Texas 78746.

4.    The Western District of Texas specifically houses "Apple's second largest U.S. campus, from which 6,000 Apple personnel work." *Koss Corp. v. Apple Inc.*, No. 6-20-CV-00665-ADA, 2021 U.S. Dist. LEXIS 222697, at *43 (W.D. Tex. Apr. 22, 2021.)  Apple has a substantial presence in this District. *Uniloc USA, Inc. v. Apple Inc.*, No. A-18-CV-992-LY, 2019 WL 2035583, at *1, 4 (W.D. Tex. Apr. 8, 2019) (stating that Apple's 1.1 million square-foot campus, separate 216,000 square-foot campus, and 6,000 employees, all located in Austin, is sufficient proof to show that "Apple has a substantial presence in this district.")

5.     On information and belief, Apple designs, assembles, manufactures, troubleshoots, distributes, imports, provides service for, and/or sells in Texas and the Western District of Texas devices such as the Mac Pro, iPad and iPhone that infringe the Patents-in-Suit.

## II.     JURISDICTION AND VENUE

6.     This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.* Thus, this Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.     This Court has personal jurisdiction over Apple.  Apple regularly conducts business and has committed acts of patent infringement within this District and the State of Texas that give rise to this action and has established minimum contacts with this District, including purposefully availing itself to, and enjoying the benefits of, the laws of Texas, such that exercise of jurisdiction over Apple would not offend traditional notions of fair play and substantial justice.  Apple markets, distributes offers for sale and/or sells products that infringe the Patents-in-Suit throughout the United States including to customers within the Western District of Texas.

8.     Venue is proper against Apple in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because it has maintained regular and established physical places of business in this District and has committed acts of patent infringement in the

District. *See In re Cray Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017). Further, venue is proper because Apple conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and this District.

9.     On information and belief, Apple has thousands of employees based in the Western District of Texas and does business in this District and across the state of Texas.[1]

10.     On information and belief, Apple's employees in this District include, for example, Program Managers, Design Engineers, Senior Designers, and Engineering Project Managers. Thus, various evidence and sources of proof related to the Patents-in-Suit and this action are located in this District.

11.     Apple also operates retail establishments in the Western District of Texas, including retail stores in Barton Creek, Austin, Texas and Domain Northside,

---

[1] See e.g., Apple checks in with 192-room hotel for billion-dollar Northwest Austin campus, published May 20, 2020 (https://austin.culturemap.com/news/city-life/05-20-20-apple-addssurprising- element-to-1-billion-campus-in-northwest-austin/); Apple bites into North Austin with new $1 billion campus and 5,000 potential jobs, published Dec. 13, 2018 (https://austin.culturemap.com/news/city-life/12-13-18-apple-bites-into-north-austin-with-new-1-billion-campus-and-5000-jobs/); Apple Press Release, Apple expands in Austin, published November 20, 2019 (https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/); Apple getting big tax rebate from Williamson County with Austin expansion, published Dec. 18, 2018 (https://www.kvue.com/article/news/local/apple-could-get-big-tax-break-fromwilliamsoncounty- with-austin-expansion/269-623955430).

Austin, Texas where products that infringe the Patents-in-Suit are sold, demonstrated, and explained to consumers in this District.

12.     The Mac Pro, a product that infringes at least one of the Patents-in-Suit, has been manufactured and/or assembled in Austin for a decade.[2]  Apple continues this presence with several job postings related to the Mac Pro including seeking engineers in Austin, Texas that require "familiarity with RF/wireless concepts" and one to play a role to "design, develop, and optimize radio frequency (RF) hardware circuits and systems for wireless communications devices" and other roles to develop wireless modules.[3]

13.     Apple also currently employs in the Austin metro area several witnesses relevant to Apple's infringement of the Patents-in-Suit including, for example, a Program Manager that "lead[s] the strategy and execution of digital support for new Apple product launches" including AirPods, a Program Manager who "facilitate[d] the execution of new product introduction launches" for AirPods 2 and AirPods Pro, an Antenna Design Engineer who supports projects "from concept to mass production" and supported AirPods projects, a Senior Designer who is "[l]ead

---

[2] Apple, *Apple's new Mac Pro to be made in Texas*  September 23, 2019, https://www.apple.com/newsroom/2019/09/apples-new-mac-pro-to-be-made-in-texas/#:~:text=The%20latest%20generation%20Mac%20Pro,be%20manufactured%20in%20Austin%2C%20Texas .
[3] https://jobs.apple.com/en-us/details/200391794/hardware-system-integration-engineer-mac?team=HRDWR;     https://jobs.apple.com/en-us/details/200452482/cellular-rf-hardware-design-engineer?team=HRDWR;     https://jobs.apple.com/en-us/details/200452082/wireless-module-engineer?team=HRDWR.

designer for: iPhone, … AirTag, [and] AirPods" and "works closely with Engineering," an "Audio QA Engineer – AirPods Products," and an Engineering Project Manager who "develop[s] new products from ideation through execution and market launch" and is involved with the "AirPods (3rd Generation) Charging Case" project team.[4]

14.    Apple also continues to expand its presence in this District including with regard to technology areas relevant to Apple's infringement of the asserted patents. For example, Apple has listed a job opening in Austin, Texas for a "Connectivity RF Hardware Design Engineer," with responsibilities including "contribut[ing] to the architecture and product level design integration of next generation wireless radio solutions in all product categories including iPhone, iPad … AirPods, and more."[5]

15.    Apple has placed or contributed to placing infringing products, including but not limited to the iPhone, iPad and the Mac Pro into the stream of commerce via established distribution channels, knowing or understanding that such

---

[4] *See* LinkedIn, *Program Manager at Apple*, https://www.linkedin.com/in/laura-justice-3529b535/; LinkedIn, *NPI Readiness Program Manager at Apple*, https://www.linkedin.com/in/huyen-tran-97643794/; LinkedIn, *Antenna Design Engineer at Apple*, https://www.linkedin.com/in/jd-barrera-500760179/; LinkedIn, *Senior Designer at Apple*, https://www.linkedin.com/in/susanshaw/; LinkedIn, *Audio QA Engineer - Apple*, https://www.linkedin.com/in/isabel-carrillo-35a77363/; LinkedIn, *Engineering Project Manager at Apple*, https://www.linkedin.com/in/johntolman/ (as to each, last accessed December 2, 2022).
[5] Careers at Apple, https://jobs.apple.com/en-us/details/200367150/connectivity-rf-hardware-design-engineer?team=HRDWR (last accessed December 2, 2022).

products would be sold and used in the United States, including in the Western District of Texas. Apple has also derived substantial revenue from infringing acts in the Western District of Texas, including from the sale and use of infringing products.

16.    Venue is also convenient as Plaintiff THL is headquartered in Austin, Texas, conducts business related to the Patents-in-Suit in this District, and has done so for a decade since its inception.

17.    There is a local interest in having this dispute resolved in the Western District of Texas because of the significant connections between the District and the events underlying this action. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021). The Western District of Texas is the home of Plaintiff THL and has been for over a decade such that THL's presence is not recent nor ephemeral. *See In re Samsung Electronics Co., Ltd.*, 2 F.4th 1371, 1378 (Fed. Cir. 2021).

## III.    FACTUAL BACKGROUND

### A.    Asserted Intellectual Property

18.    THL, and its related company Tree House Labs, sought to change the way in which hardware and software operated together. THL and Tree House Labs, based in this District and through its team of Texas-based inventors, developed the intellectual property asserted against Apple in this action. These inventors include

John Howard, Richard Cutler and Robert Kennard. THL is the owner of the intellectual property asserted against Apple in this action.

19.    In 2010, THL filed patent application No. 12/713,346 to protect technologies that it pioneered in the industry. As a result of its pioneering technology, THL was awarded several patents that originated with its 2010 patent application.

20.    Over the next few years, THL developed a product called the BIKN which operated with the Apple iPhone available on the market at that time. The BIKN was sold with tags that could be located with an iPhone with additional hardware and software provided by the BIKN.  In the course of the development of the BIKN, THL worked with related companies based in Austin, Texas.   For example, THL worked with InMotion Software LLC to develop the iPhone App that operated with THL's BIKN hardware. The BIKN App, developed based on THL's patent filing, was written and developed by Brian Howard (CTO) and Jeremy Howa (Senior Developer) with THL at InMotion Software, LLC and its common place of business at 601 Great Oaks Drive Round Rock, Texas, 76861.

21.    THL's inventors as well as Nancy Crume and Bruce Stuckman – both longtime Texas residents – worked to bring the innovative BIKN hardware and App to fruition. At the time, Nancy Crume was the Chief Marketing Officer for the BIKN.

22.    The BIKN product in its packaging is shown below.



23.     The BIKN received positive results from the marketplace. THL presented its product at high profile events such as the Consumer Electronics Show ("CES") and have won awards for the innovations in the BIKN. As shown below, CEO John Howard presented the capabilities of the BIKN at CES.



**BIKN CES Video at :14**[6]

---

[6] BIKN (Jan. 9, 2012), https://www.youtube.com/watch?v=5GGLGSdwbPk



**BIKN CES Video at :26**

24.     Operating out of Austin, Texas, THL commercialized the BIKN. THL, with its related company InMotion Software, even became an Apple Authorized Hardware Vendor to supply its hardware and related software on the Apple iOS platform through the AppStore.   While THL sales dwindled based on Apple's systematic changes in hardware for its iPhone products, THL remains based in Austin, Texas and maintains is corporate records, archives, and business in this District.

25.     THL continued to prosecute patents based on its 2010 filing even as sales of its BIKN products became more difficult based on Apple's changes in hardware.

26.     U.S. Patent No. 8,768,381 (the '381 patent") titled "Wireless device and Methods for use in a paging network" was duly and legally issued on July 1, 2014. The '381 patent is a continuation that claims priority to patent application No.

12/713,346 filed on February 26, 2010. A true copy of the '381 patent is attached hereto as Exhibit A.

27.    U.S. Patent No. 11,265,680 (the "'680 patent") titled "Wireless device and Methods for use in a paging network" was duly and legally issued on March 1, 2022. The '680 patent is a continuation that claims priority to patent application No. 12/713,346 filed on February 26, 2010. A true copy of the '680 patent is attached hereto as Exhibit B.

28.    U.S. Patent No. 11,350,246 (the "'246 patent") titled "Wireless device and methods for use therewith" was duly and legally issued on May 31, 2022. The '246 patent is a continuation that claims priority to patent application No. 12/713,346 filed on February 26, 2010. A true copy of the '246 patent is attached hereto as Exhibit C.

29.    THL is the owner of all right, title and interest in the Patents-in-Suit, including the right to sue and recover for past infringement.

30.    The Patents-in-Suit, generally speaking provide specific, non-conventional improvements to existing computer devices to create a system for providing an interactive computing interface for the location and finding of connected hardware devices.  The Patents-in-Suit do not claim conventional methods.  Instead, the claims of the Patents-in-Suit are particularly advantageous in

locating related hardware with a unique and efficient process of utilizing new technology to enable persons to find remote hardware effectively.

## B.  Defendant's Infringing Products

31.    Defendant Apple markets, manufactures, distributes, imports, offers for sale, has offered for sale, sells, has sold, advertises, and promotes the iPhone, Mac Pro, and other infringing products throughout the United States, including such products that work with Apple AirTags, Apple AirPods and the Apple Watch as described more fully below. Specifically, the Mac Pro infringes the '381 Patent, an example provided herein explains its infringement based on its designed functionality with certain Apple AirPods.  The iPhone and iPad infringe the '680 Patent, examples are provided herein to explain Apple's infringement based on its designed functionality with certain Apple AirPods, for example.  Finally, the iPhone 11, 12, 13 and 14 models infringe the '246 patent, an example is provided herein to explain Apple's infringement based on its designed functionality with Apple AirTags and other devices.  These Apple products shall be referenced collectively herein as the Accused Products.

32.    As shown below, Apple now offers a lost and found feature[7] as developed and marketed in the BIKN product by THL a decade ago.

---

[7]    Apple,   Apple.com  Buy   AirTag   four   pack   (visited   June   30,   2022.)
https://www.apple.com/shop/buy-airtag/airtag/4-
pack?fnode=a9ac892e1f5e060a35927b198dcb48739a556cf1d3a9ee509a7e0b2e8ed465f4cff0895



33.    More specifically, Apple's iPhones and other devices are sold with the Find My App that can interact with Apple AirTags permitting the "Precision Finding", "find nearby" or "precise location" feature. With respect to the AirTags, Apple further advertises that the precise location can be located though a "supported iPhone with Ultrawideband" which includes Apple iPhone models 11, 12, 13, and 14:[8]

---

d96a03111b54370d1eeffb5507add6ec7a6be5fd1428314032c87484b3fcace648a1d6039e9a33ceb
eba59d8dd9d73910e20c1d687d939bf856864a07 .

[8] Apple, https://support.apple.com/en-us/HT210967 .



34.     In the Find My App, each device of a user is listed and when an Apple AirTag is selected, an option of "Find Nearby" is displayed as shown above in Apple's advertising and support materials.   When "Find Nearby" is selected a display with an arrow and distance is presented to assist a user to determine the precise location of the AirTag:[9]

---

[9] Apple, https://support.apple.com/en-us/HT210967 .



35.    While the Complaint provides non-limiting examples, upon information and belief, Apple develops or sells other devices that are related to the infringement.

## Count I: Infringement of U.S. Patent No. 8,768,381

36.     THL repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

37.     Apple has infringed and continues to infringe the '381 patent directly or indirectly (by inducing infringement by others) by, inter alia, making, using selling, importing and/or offering for sale devices that practice all limitations of at least one claim of the '381 patent.  The infringing devices include the Mac Pro and specifically its designed functionality with Air Pods Pro or Max.

38.    In the alternative to literal infringement, Apple has infringed and continues to infringe at least one claim of the '381 patent under the doctrine of equivalents.

39.    For example, claim 1 of the '381 patent recites:

1. A wireless device for locating at least one remote object, the wireless device comprising:

a graphical user interface that generates a pairing signal in response to a first indication from a user to pair the wireless device to at least one remote device;

and generates a first location request signal in response to a second indication from a user to locate the at least one remote device;

a short-range wireless transceiver, coupled to the graphical user interface, that responds to the pairing signal generated by the graphical user interface by communicating RF signals to pair the wireless device to the at least one remote device and that transmits a first RF paging signal to the at least one remote device in response to the first location request signal and that receives a location signal from the at least one remote device;

wherein the graphical user interface presents a display that visually assists the user to locate the at least one remote device.

40.    Apple's Mac Pro product practices all limitations of at least this claim as shown below.  The allegations set forth herein are illustrative and not intended to be exhaustive or a limiting explanation of every manner in which Apple's products infringe the '381 Patent.

41.    The Apple Mac Pro is a wireless device.  Specifically, the Mac Pro includes 802.11 Wi-Fi wireless networking as well as a Bluetooth 5.0 connection. These are both wireless connections.

42.    The Apple Mac Pro uses a graphical user interface, that operates via a computer screen/monitor for operation.  Specifically, the graphical user interface of the Mac Pro Find my app generates a pairing signal in response to a first indication from a user to pair the Mac Pro to Air Pod Pro or Max products as the remote device, for example.    The Apple Mac Pro and its Bluetooth wireless transceiver communicate RF signals to pair the Mac Pro and the Air Pods Pro or Max in response to the selection of AirPods in the Devices list as shown below.



## Pair your AirPods with your Mac

If your AirPods are not connected with your iPhone, you can connect them directly with your Mac.

1. With your AirPods in their case, open the lid.

2. Press and hold either the setup button on the back of the case or the noise control button (on AirPods Max only) until the status light flashes white.

3. On your Mac, choose Apple menu  > System Preferences, then click Bluetooth .

4. **Select AirPods in the Devices list.**

5. If your AirPods support it, click Enable to be able to say "Hey Siri" to start using Siri with your AirPods.

43.    The Mac Pro generates a first location request signal in response to a second indication from a user to locate the at least one remove device, which is the Air Pods Pro or Max.  The second indication from the user is the selection of AirPods as explained below to "Get the location of your AirPods," for example as shown below.

## Get the location of your AirPods

- *On iPhone, iPad, iPod touch:* Open the Find My app, tap Devices, then tap your AirPods.

- *On Apple Watch:* With a Wi-Fi or cellular connection, open the Find Devices app, then choose your AirPods (watchOS 8.0 or later).

- *On Mac:* Open the Find My app, click Devices, then select your AirPods.

- *On iCloud.com:* Go to iCloud.com/find, sign in with your Apple ID, select All Devices, then select your AirPods.

If your AirPods are separated from each other, you see only one location at a time on the map. Find the one that you see on the map, put it back in its case, then refresh the map to locate the other one.

If your AirPods are paired but currently offline, Find My shows the last time and place they were online.

For AirPods (3rd generation), AirPods Pro, or AirPods Max, you can continue to see their updated location in the Find My app for up to 24 hours. After that, the Find My app shows the last time and place they were online. See Turn on the Find My network.

44.    The Mac Pro includes a short-range wireless transceiver, as explained above in paragraph 41, coupled to the graphical user interface, that responds to the pairing signal and then transmits a first RF pairing signal to the at least one remote device, which in this example is the Air Pods Pro or Max.  The transceiver also transmits a first RF paging signal to the remote device in response to first location request signal. As another example, the first paging signal is made in response to the selection of "play sound" on the Mac Pro Find my app, as shown for example below.

## Play a sound on your AirPods or Beats product

You can play a sound on your AirPods or Beats headphones if they're out of their case. If you turn on the Find My network for AirPods (3rd generation), AirPods Pro, or AirPods Max, you can also play a sound when they're in their case.

1. In the Find My app on your Mac, click Devices.

2. In the Devices list, select your AirPods or Beats product, then click the Info button ⓘ on the map.

3. Click Play Sound. If your AirPods or Beats product are separated, you can click Left or Right to find them one at a time.

45.    Finally, the Mac Pro uses its graphical user interface to present a display, in this case, a map and icon, that visually assists the user to locate the Air Pods Pro or Max, for example.  As explained, when the device is located, "it appears on the map so you can see where it is."



46.    As set forth above with respect to the elements of claim 1 of the '381 patent, Apple's infringement of at least claim 1 of the '381 patent is ongoing at least with respect to the Apple Mac Pro.

47.    THL contends that each limitation is satisfied by Apple. However, if acts constituting direct infringement of the '381 patent are not performed by Apple, such acts are performed by Apple's customers and/or end users using Apple-owned software, who act at the direction and/or control of Apple, with Apple's knowledge. Apple took active steps, directly and/or through contractual relationships with

others, with the specific intent to cause them to use the products in a manner that infringes claims of the '381 patent. Such steps by Apple include without limitation advising and directing customers and/or end users to use the Mac Pro and Apple-owned software, for example, in an infringing manner with a monitor; advertising and promoting the use of the Mac Pro in an infringing manner; designing products that require infringement by the end user; and/or distributing instructions that guide end users to use the Mac Pro in an infringing manner. Apple performs these steps, which constitute induced infringement, with knowledge of the '381 Patent and with the knowledge that the induced acts constitute infringement. Apple is aware that the normal and customary use of the Accused Products by its customers and/or end users would infringe the '381 Patent. Apple's induced infringement is ongoing.

48.    Defendant's activities also constitute infringement of other claims of the '381 patent.

49.    THL has suffered damages as a result of Apple's infringing activities, including but not limited to a reasonable royalty on Apple's sale of infringing products and Apple's sale of convoyed products including but not limited to Apple devices, e.g., AirPods etc., that may be located using infringing products in the manner described above.  THL will continue to suffer damages as long as those infringing activities continue.  THL is entitled to recover from Apple the damages it sustained as a result of Apple's wrongful acts in an amount subject to proof at trial.

50.    THL has been, and will continue to be, irreparably harmed by Apple's infringing conduct unless Apple is enjoined by this Court.

51.    THL has no adequate remedy at law.

## Count II: Infringement of U.S. Patent No. 11,265,680

52.    THL repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

53.    Apple has infringed and continues to infringe the '680 patent directly or indirectly (by inducing infringement by others) by, inter alia, making, using selling, importing and/or offering for sale devices that practices each and every limitation of at least one claim of the '680 patent. The infringing devices include the iPhone and iPad, specifically its designed functionality with remote devices including but not limited to Air Pods (3rd generation), Air Pods Pro, or Air Pods Max.

54.    In the alternative to literal infringement, Apple has infringed and continues to infringe at least one claim of the '680 patent claims under the doctrine of equivalents.

55.    For example, claim 10 of the '680 patent recites:

1. A mobile communication device comprising:

a plurality of wireless transceivers;

a touchscreen;

a memory that stores operational instructions; and

a processor configured to execute operational instructions, wherein the operational instructions cause the processor to present a graphical user interface via the touch screen and wherein the processor operates in association with the graphical user interface to:

respond to a first user interaction with the touchscreen by pairing, via at least one of the plurality of wireless transceivers, the mobile communication device with at least one remote device, the at least one remote device including a sound emitter configured to generate an audio alert;

facilitates, via a second interaction with the touchscreen, selection of the at least one remote device from a plurality of remote devices;

responds to a third interaction with the touchscreen by transmitting, via at least one of the plurality of wireless transceivers, a first paging signal to the at least one remote device, wherein the first paging signal causes the at least one remote device to generate the audio alert; and

present a display on the touchscreen, based on a signal received via at least one of the plurality of wireless transceivers from the at least one remote device, wherein the display visually assists a user to determine a location of the at least one remote device.

56.     Apple's iPhone products practice all elements of this claim, specifically its designed functionality with remote devices including but not limited to Air Pods (3rd generation), Air Pods Pro (All generations), and Air Pods Max.  The allegations set forth herein are illustrative and not intended to be exhaustive or a limiting explanation of every manner in which Apple's products infringe the '680 Patent.

57.    The Apple iPhone is a mobile communication device that includes a plurality of wireless transceivers, a memory, a processor, a graphical user interface, and a touch screen.

58.    The processor of the iPhone is configured to execute operational instructions, wherein the operational instructions cause the processor to present a graphical user interface via the touch screen, and wherein the processor operates in association with the graphical user interface.

59.    The Apple iPhone responds to a first user interaction with the touchscreen by pairing, the iPhone with the at least one remote device, for example, an Apple Air Pod Pro or Max.  The following shows, for example, the graphical user interface of an iPhone interacting with an AirPod Pro device.  Such interactions occur with additional remote devices.



60.    The Apple Air Pod Pro, for example, includes a sound emitter configured to generate an audio alert. This is shown, for example, in the following explanation from Apple.





61.    The Apple iPhone facilities selection of the at least one remote device, in this case, AirPods for example, from a list of several remote devices.

Locate your AirPods in the Find My app

1. Open the Find My app.

2. Select the Devices tab.

3. Choose your AirPods. Under each device, you see a location or "No location found."

62.    The Apple iPhone responds to a third interaction with the touchscreen by transmitting a first paging signal to the Air Pods pro which cause the Air Pods to generate an audio alert.  The third interaction with the touch screen involves the "Play Sound" selection for example.  In response to the third interaction with the touchscreen, the Apple iPhone, via at least one of the plurality of wireless transceivers, transmits a first paging signal to the Air Pods Pro, for example, which causes the Air Pods Pro to generate an audio alert.



63.     Moreover, the iPhone processor also presents a display on the touch screen based on the signal from the Air Pods, to present a display that visually assists a user to determine a location of the at least one remote device.  This is shown, for example, in the explanations provided by Apple.



64.     Apple's infringement of at least claim 10 of the '680 patent is ongoing.

65.     THL contends that each limitation is satisfied by Apple. However, if acts constituting direct infringement of the '680 patent are not performed by Apple, such acts are performed by Apple's customers and/or end users using Apple-owned software and who act at the direction and/or control of Apple, with Apple's knowledge. Apple took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the Apple products in a manner that infringes claims of the '680 patent. Such steps by Apple include but are not limited to advising and directing customers and/or end users to use the iPhone and Apple-owned software, for example, in an infringing manner; advertising and promoting the use of the iPhone in an infringing manner; designing products that require infringement by the end user, and/or distributing instructions that guide end users to use the iPhone in an infringing manner. Apple performs these steps, which constitute induced infringement, with knowledge of the Patents-in-Suit and with the knowledge that the induced acts constitute infringement. Apple is aware that the normal and customary use of the iPhone by its customers and/or end users would infringe the patents-in-suit. Apple's induced infringement is ongoing.

66.     Apple's acts of infringement have caused damages to THL, including but not limited to a reasonable royalty on Apple's sale of infringing products and Apple's sale of convoyed products including but not limited to Apple devices, e.g.,

AirPods Etc., that may be located using infringing products in the manner described above. THL is entitled to recover from Apple the damages it sustained as a result of Apple's wrongful acts in an amount subject to proof at trial.

67.    Defendant's activities also constitute infringement of other claims of the '680 patent.

68.    THL has suffered damages as a result of the infringing activities of Apple, and THL will continue to suffer damages as along as those infringing activities continue.

69.    THL has been, and will continue to be, irreparably harmed by Defendant's infringing conduct unless Apple is enjoined by this Court.

70.    THL has no adequate remedy at law.

## Count III: Infringement of U.S. Patent No. 11,350,246

71.    THL repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

72.    Apple has infringed and continues to infringe the '246 patent directly or indirectly (by inducing infringement by others) by, inter alia, making, using selling, importing and/or offering for sale devices that practices each and every limitation of the '246 patent. The Apple iPhone models 11, 12, 13 and 14 infringe claims of the '246 Patent. The infringement is explained with respect to the iPhone's

designed functionality with Apple Air Tags, but applies to additional remote devices such as the Apple Air Pods Pro or Max as well as the Apple Watch.

73.    In the alternative to literal infringement, Apple has infringed and continues to infringe the '246 patent claims under the doctrine of equivalents.

74.    For example, claim 1 which is illustrative of the claims of the '246 patent recites:

1. A mobile communication device comprising:

a plurality of wireless transceivers including a Bluetooth transceiver, a long-range transceiver configured to send and receive telephone calls via a telephony network and to communicate Internet data, and one or more ultra-wideband transceivers coupled to two or more antennas;

a memory that stores operational instructions;

a touch screen; and

a processor coupled to the plurality of wireless transceivers, the memory, and the touch screen, wherein the processor is configured to execute the operational instructions, which upon execution, cause the processor to:

present a graphical user interface via the touch screen;

in response to a pair request from a user received at the graphical user interface, pair the mobile communication device with at least one remote device;

in response to an audio alert request from the user received at the graphical user interface, transmit an audio alert request signal to the at least one remote device via the Bluetooth transceiver;

estimate a distance between the mobile communication device and the at least one remote device based on ultra-wideband

communication between the one or more ultrawideband transceivers and the at least one remote device and time of flight calculations;

determine a direction to the at least one remote device based on signal delay of ultra-wideband communications between the two or more antennas and the at least one remote device; and

output to the graphical user interface the estimated distance to the at least one remote device and an arrow pointing in the direction of the at least one remote device.

75.    Apple's iPhone models 11, 12, 13 and 14 practice each of every element of this claim as shown below.    The following description of infringement is illustrative and not intended to be exhaustive or a limiting explanation of every manner in which Apple's iPhone infringe. Apple infringes additional claims of the '680 Patent.

76.    The Apple iPhone, including models 11, 12, 13, and 14, is a mobile communication device that includes a plurality of wireless transceivers including a Bluetooth transceiver, a long-range transceiver, and one more ultra-wideband transceivers coupled to two or more antennas, a memory, a touch screen, a processor which presents a graphical user interface via the touch screen.  As an example, the following pages are displayed at https://www.apple.com/iphone-11/specs/ that confirm these elements are present in the accused iPhone 11.



77.     The processor of Apple iPhone is configured to execute operational instructions, which upon execution, cause the processor to present a graphical user interface via the touch screen.

78.     The processor of Apple iPhone is configured to execute operational instructions, which upon execution, cause the processor to in response to a pair

request from a user received at the graphical user interface, pair the mobile communication device with at least one remote device. The following example provide an Apple Air Tag as the remote device.



79. The processor of Apple iPhone is configured to execute operational instructions, which upon execution, cause the processor to in response to an audio alert request from the user received at the graphical user interface, transmit an audio alert request signal to the at least one remote device via the Bluetooth transceiver. The audio alert request from the user is indicated in the image below and "When your AirTag is within Bluetooth range of your connected device, you can play a sound on your Air Tag by tapping on the Play Sound button."



80.    Apple iPhone 11, 12, 13 and 14 include "Find Nearby" functionality for use with Apple Air Tags as shown below.



81.    The processor of Apple iPhone is configured to execute operational instructions, which upon execution, cause the processor to estimate a distance between the Apple AirTag and the iPhone based on ultra-wideband communication and time of flight calculations and also determines a direction to the at least one remote device based on signal delay between the two or more antennas and the Apple Air Tag.

82.    The processor of Apple iPhone is configured to execute operational instructions, which upon execution, cause the processor to output to the graphical user interface the estimated distance to the at least one remote device and an arrow pointing in the direction of the at least one remote device.  The distance estimate and

direction is set forth on the graphical user interface, and Apple acknowledges it is
based on "Ultra Wideband technology," as shown below.



83.     As noted above, the precision finding feature is only compatible with
Apple iPhone models 11 and newer models, which provides a reasonable and highly
likely inference that an ultra-wide band communication enable this element of claim
1 of the '246 Patent.[10] Moreover, the graphical user interface the estimated distance
to the Air Tag and an arrow pointing in the direction of the Air Tag.[11]

---

[10] Apple, https://support.apple.com/en-us/HT210967 (visited July 2022).
[11] *Id*.



84.     Apple's infringement of at least claim 1 of the '246 patent is ongoing.

85.     THL contends that each limitation is satisfied by Apple. However, if acts constituting direct infringement of the '246 patent are not performed by Apple, such acts are performed by Apple's customers and/or end users using Apple-owned software, who act at the direction and/or control of Apple, with Apple's knowledge. Apple took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the iPhone models 11, 12, 13 and 14 and Apple-owned software in a manner that infringes claims of the '246 patent. Such steps by Apple include but are not limited to advising and directing customers and/or end users to use the iPhone models 11, 12, 13 and 14 in in an infringing manner; advertising and promoting the use of the iPhone in an infringing manner; designing products that require infringement by the end user, and/or distributing instructions that guide end users to use the iPhone in an infringing

manner. Apple performs these steps, which constitute induced infringement, with knowledge of the patents-in-suit and with the knowledge that the induced acts constitute infringement. Apple is aware that the normal and customary use of the iPhone models 11, 12, 13 and 14 by its customers and/or end users would infringe the patents-in-suit when sold with Apple Air Tags. Apple's induced infringement is ongoing.

86.    Apple's acts of infringement have caused damages to THL, including but not limited to a reasonable royalty on Apple's sale of infringing products and Apple's sale of convoyed products including but not limited to Apple devices, e.g., AirTags etc., that may be located using infringing products in the manner described above.  THL is entitled to recover from Apple the damages it sustained as a result of Apple's wrongful acts in an amount subject to proof at trial.

87.    Defendant's activities also constitute infringement of other claims of the '246 patent.

88.    THL has suffered damages as a result of the infringing activities of Apple, and THL will continue to suffer damages as along as those infringing activities continue.  THL has been, and will continue to be, irreparably harmed by Defendant's infringing conduct unless Apple is enjoined by this Court.

89.    THL has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** THL prays for judgment against Defendant as follows:

A.     A determination that Defendant has infringed U.S. Patent No. 8,768,381 literally or under the doctrine of equivalents;

B.     A determination that Defendant has infringed U.S. Patent No. 11,265,680 literally or under the doctrine of equivalents;

C.     A determination that Defendant has infringed U.S. Patent No. 11,350,246 literally or under the doctrine of equivalents;

D.     Awarding Plaintiff its damages, together with prejudgment interest and costs, and increasing those damages to three times the amount found or assessed as provided by 35 U.S.C. § 284;

E.     A determination that this case is exceptional within the meaning of 35 U.S.C. § 285, and awarding Plaintiff reasonable attorney fees and costs and disbursements in this action;

F.     Permanently enjoining and restraining Defendant, its officers, directors, employees, agents, servants, successors, and assigns, and any and all persons acting in privity or in concert with Defendant from further infringement of U.S. Patent No. 8,768,381;

G.     Permanently enjoining and restraining Defendant, its officers, directors, employees, agents, servants, successors, and assigns, and any and all persons acting

in privity or in concert with Defendant from further infringement of U.S. Patent No.

11,265,680;

H.    Permanently enjoining and restraining Defendant, its officers, directors,

employees, agents, servants, successors, and assigns, and any and all persons acting

in privity or in concert with Defendant from further infringement of U.S. Patent No.

11,350,246;

I.    An award of Plaintiff's taxable costs of this civil action, including

interest;

J.    An award of any additional costs and disbursements incurred as a result

of bringing this action; and

K.    Any such other, further, and additional relief that the Court deems

reasonable.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial on all issues

triable by a jury.

Dated:  February 9, 2023

Respectfully submitted,

**PARKER, BUNT & AINSWORTH, P.C.**

By: _/s/ Charles L. Ainsworth_
     Charles L. Ainsworth
     State Bar No. 00783521
     100 E. Ferguson, Suite 418
     Tyler, Texas 75702
     (903) 531-3535
     charley@pbatyler.com